JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILVER PEAKS, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>CAREMORE HEALTH PLAN, *et al*.,<br><br>        Defendants. | Case No. 2:21-cv-04608-FLA (PDx)<br><br>**RULING GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING DEFENDANT CAREMORE'S MOTION TO DISMISS AS MOOT** |

## RULING

Before the court are two motions: (1) Plaintiff Silver Peaks, LLC's ("Plaintiff" or "Silver Peaks") Motion to Remand (Dkt. 23) ("MTR"); and (2) Defendant CareMore Health Plan's ("Defendant" or "CareMore") Motion to Dismiss Plaintiff's Complaint (Dkt. 24) ("MTD"). CareMore opposes Plaintiff's Motion to Remand. Dkt. 28 ("Opp. to MTR").

On July 27, 2021, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for July 30, 2021. Dkt. 33; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated herein, the court GRANTS Plaintiff's Motion to Remand and DENIES Defendant CareMore's Motion to Dismiss as moot.

## BACKGROUND

Plaintiff filed this action on April 23, 2021 in Los Angeles Superior Court against Defendants CareMore, Country Villa Claremont Health Care Center, Inc. ("Claremont"), and Rockport Healthcare Support Services, LLC ("Rockport") (collectively, "Defendants"). *See* Dkt. 1-4 ("Compl."). Plaintiff is a home care organization that provides non-medical services, including supervisory "sitter services," to patients that reside in their home or live in an elderly care facility. Compl. ¶ 1. Defendant CareMore is a "medical group health plan, care delivery system and insurer that works with a subscriber member's insurance plan to deliver needed care to subscribing members." *Id.* ¶ 2. Defendant Claremont is a health care facility operating in California, and Defendant Rockport is Claremont's parent company. *Id.* ¶¶ 3, 16. Plaintiff seeks damages against Defendants for (1) fraud, (2) breach of contract, (3) breach of contract as third-party beneficiary, (4) breach of implied contract, (5) account stated, (6) quantum meruit, and (7) unjust enrichment. Compl. ¶¶ 18-59.

Plaintiff alleges Claremont and CareMore entered into a Letter of Agreement ("LOA") through which Plaintiff would provide sitter services for patient M.C. ("Patient"),[1] who was enrolled in a Medicare Advantage plan administered by CareMore.[2] Compl. Ex. 1. According to Plaintiff, it rendered these sitter services for

---

[1] Patient is identified by her initials for privacy purposes.

[2] Medicare Advantage allows individuals to receive Medicare benefits through private health-insurance plans instead of Medicare Parts A and B, the government's fee-for-service program. *See* 42 U.S.C. § 1395w–21. "To participate, insurers referred to as Medicare Advantage Organizations (MAOs) contract with the federal Centers for Medicare & Medicaid Services (CMS)." *Ohio State Chiropractic Ass'n v. Humana Health Plan Inc.*, 647 Fed. App'x 619, 620 (6th Cir. 2016) (citing 42 U.S.C. § 1395w–

Patient from January 17, 2020 to February 5, 2020 in Claremont's facility.  Compl. ¶ 12.  Plaintiff states the LOA outlines the following business practice for payment between Claremont and CareMore.  MTR 3-4.  First, Claremont must bill CareMore for the services Patient received within sixty calendar days from the dates of service.  *Id.*; Compl. Ex. 1 ¶ 4.  Next, CareMore issues a check for those services to either Claremont or Rockport.  MTR 4; Compl. Ex. 1 ¶ 5.  Finally, Claremont or Rockport reimburses Plaintiff for its services.  MTR 4.

In February 2020, Plaintiff sent Claremont an invoice for the sitter services it performed for Patient in the amount of $8,226.  Compl. ¶ 13, Ex. 4.  On July 17, 2020, a Claremont employee allegedly told Plaintiff's counsel that CareMore had issued the funds for Plaintiff to be paid, but Rockport was withholding the funds.  *Id.* ¶ 16.  Plaintiff, however, believes CareMore may be holding the funds and refusing to pay for the contracted services.  MTR 5.  Plaintiff further alleges it still has not received payment for the sitter services, despite notifying Defendants and sending multiple overdue invoices.  Compl. ¶ 17.

Defendant CareMore removed this action from state court on June 4, 2021, arguing removal is proper under the "federal officer" removal statute, 28 U.S.C. § 1442(a)(1).[3]  Dkt. 1.  Plaintiff filed the instant Motion to Remand on July 1, 2021.

---

27; 42 C.F.R. § 422.503).  As the Sixth Circuit has explained, "CMS makes monthly per-beneficiary payments to MAOs, which take on the prospective financial risk of serving Medicare beneficiaries.  Generally speaking, MAOs have latitude to 'select the [health-care] providers from whom the benefits under the plan are provided.'  To that end, MAOs often contract with physicians and hospitals.  But to cover the full panoply of Medicare benefits, [Medicare Advantage] plans include services that are sometimes furnished by non-contract providers.'" *Id.* (citations omitted).

[3] The Notice of Removal also alleged the court has federal question jurisdiction pursuant to 28 U.S.C. § 1441(c).  Dkt. 1 at ¶¶ 24-27.  Defendant CareMore, however, abandons this argument in its opposition to Plaintiff's Motion to Remand.  *See* Opp. to MTR 10.  Accordingly, the court limits its analysis to whether the court has jurisdiction pursuant to the federal officer removal statute.

Dkt. 23. The same day, Defendant CareMore filed its Motion to Dismiss, arguing, *inter alia*, that Plaintiff's state law claims are preempted under the Medicare Act and that the court lacks subject matter jurisdiction because Plaintiff did not comply with the Medicare Act's exhaustion requirements. Dkt. 24.

## DISCUSSION

### I. Legal Standard

#### A. Removal Generally

Federal courts have subject matter jurisdiction only as authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court only if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). The party seeking removal bears the burden of establishing federal jurisdiction by a preponderance of the evidence. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)).

In ruling on a motion to remand, jurisdiction is generally determined from the face of the complaint. *Miller v. Grgurich*, 763 F.2d 372, 373 (9th Cir. 1985). The court may remand the action sua sponte "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *United Invs. Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th Cir. 2004).

#### B. The Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1)

Under the federal officer removal statute, a civil action may be removed to federal court by "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office…." 28 U.S.C. § 1442(a)(1) ("§ 1442"). In the Ninth Circuit, federal officer removal is available to a defendant under § 1442(a) if: (1) the removing defendant is a "person" within the meaning of the statute; (2) there is a causal nexus between the removing party's actions, taken pursuant to a federal

officer's directions, and plaintiff's claims; and (3) the removing party can assert a colorable federal defense. *Stirling v. Minasian*, 955 F.3d 795, 800 (9th Cir. 2020).

The federal officer removal statute is an exception to the "well-pleaded complaint" rule, which requires a federal question to appear on the face of the complaint for jurisdiction to be proper, rather than raised as an anticipated or actual defense. *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999) (*superseded by statute on other grounds as discussed in Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017). In other words, the statute allows removal of suits against federal officers and people acting under them so long as: (1) a "connection or association" exists between the act in question and the federal office; and (2) their defense depends on federal law. *Id.*

## II.   Analysis

CareMore argues this case was properly removed to federal court because Patient was enrolled in a Medicare Advantage plan that CareMore administered, and "Medicare coverage determinations and reimbursements are predicated on a purely federal scheme involving federal Medicare Act statutes, its implementing regulations, and policy determinations from the Centers for Medicare and Medicaid Services ("CMS")…." Opp. to MTR 1. Thus, according to CareMore, removal under the federal officer statute is appropriate for private entities like itself because it administers Medicare benefits under the direction of the federal government. *Id.* 1-2. The court disagrees for two reasons.

First, from the face of the Complaint and its exhibits, the Medicare Act and its implementing regulations appear to be irrelevant here. As Plaintiff points out, the LOA explicitly states that "Patient Sitter Services are considered as <u>excluded from Medicare allowable payment</u> and paid in addition to the Medicare allowable payment at $18/hr…." Compl. Ex. 1, ¶ 5 (emphasis added). In other words, the LOA states that sitter services are not covered by Medicare, but that CareMore will nonetheless cover those services at a rate of $18 an hour.

CareMore responds that "despite Plaintiff's argument that the LOA states that sitter services are not covered under Medicare, Attachment A to the LOA provides that '[i]n the event of any inconsistency between the terms and conditions of this Attachment and the terms and conditions in the remainder of the [LOA], the terms and conditions of this Attachment A shall govern.'" Opp. to MTR 6 (citing Compl. Ex. 1, Attach. A, § 12.1). CareMore, however, does not explain how any provision of Attachment A contradicts the explicit terms of the LOA or how sitter services are in fact covered by Medicare. Nor does CareMore point to any "inconsistency" between the LOA and Attachment A regarding Medicare coverage of sitter services.

CareMore also contends that "[w]hether or not Plaintiff is seeking payment for services that may not be covered [by Medicare] … is not relevant to the issue for purposes of jurisdiction under the federal officer removal statute." Opp. to MTR 6. To the contrary, if sitter services are not covered by Medicare pursuant to the LOA, CareMore cannot assert either: (1) a "causal nexus" between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; or (2) a "colorable federal defense." *See Stirling*, 955 F.3d at 800. CareMore, thus, fails to establish removal is appropriate.

Second, even if Medicare covered sitter services here, the court is not persuaded CareMore was "acting under" any federal officer or agency under Supreme Court precedent interpreting § 1442(a)(1).[4] CareMore quotes *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147, 152 (2007), to argue that a private entity is "acting under" a federal officer when it is involved in "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior," and that the term "acting under" is broad and must be liberally construed. Opp. to MTR 3-4 (italics in *Watson*). The Supreme Court,

---

[4] As the court concludes Defendant does not meet its burden to show it was "acting under" a federal official or agency for purposes of the removal statute, it need not address the parties' arguments regarding the additional requirements of § 1442.

however, also emphasized that "broad language is not limitless. And a liberal construction nonetheless can find limits in a text's language, context, history, and purposes." *Watson*, 551 U.S. at 147.

As *Watson* explained, the "basic purpose" of federal officer removal is to prevent interference with the federal government's operations caused, for example, by a state's prosecution of federal officers and agents acting within the scope of their authority. *Id*. at 150. It also serves to protect federal officers and agents from "local prejudice" against federal laws or officials, and to ensure "federal officials [access to] a federal forum in which to assert federal immunity defenses." *Id*.

Here, CareMore's interpretation of the federal officer removal statute stretches it too far from its original purpose. CareMore is not at a significant risk of state-court "prejudice" because it administers Medicare benefits. *See id*. at 152. A state-court lawsuit brought against CareMore is not likely to disable federal officials from taking necessary action to enforce federal law. *Id*. Nor is a state-court lawsuit in this action likely to deny a federal forum to an individual entitled to assert a federal claim of immunity. *Id*. Accordingly, neither the language, nor history, nor purpose of the removal statute leads the court to believe Congress intended to expand the scope of federal officer removal to entities such as CareMore. *See id*. at 147-53 (reviewing the history and purpose of the federal officer removal statute).

To be sure, a private contractor may "act under" a federal officer or agency when it "helps [federal] officers fulfill … basic governmental tasks" and "perform[s] a job that, in the absence of a contract with a private firm, the Government itself would have … to perform." *Id*. at 153. This requires a showing that the government formally delegated its legal authority to the private entity to act on its behalf. *Id*. at 156.

CareMore argues it performs government tasks by administering Medicare benefits under Medicare Advantage plans, but fails to submit any evidence showing Congress, CMS, or any other federal agency formally delegated legal authority to

1 CareMore. *See id.* at 157 (noting that without evidence of formal <u>delegation</u>, the
2 defendant was merely subject to government <u>regulation</u>, which is not sufficient for
3 removal purposes). For example, CareMore does not submit evidence of a contract
4 between itself and the government or point to a statute or regulation that explicitly
5 delegates legal authority from the government to CareMore. *See id.* (holding plaintiff
6 failed to establish it was "acting under" a federal officer where there was "no evidence
7 of any delegation of legal authority" from a government agency nor "evidence of any
8 contract, any payment, any employer/employee relationship, or any principal/agent
9 arrangement").

10  CareMore, thus, has failed to demonstrate by a preponderance of the evidence
11 that it has anything more than an arms-length relationship with CMS, or that the
12 control to which CareMore is subject is the type of close relationship necessary for a
13 private contractor to "act under" a federal agency. *See Vaccarino v. Aetna, Inc.*, No.
14 5:18-cv-02349-JGB (SHKx), 2018 WL 6249707, at *6 (C.D. Cal. Nov. 29, 2018)
15 (holding that "[b]ecause Removing Defendants have not explained the nature of
16 CMS's control over coverage decisions or elaborated on the government's interest in
17 such decisions, they fail to meet their burden of showing that their actions were 'taken
18 pursuant to a federal officer's directions.'").

19  Accordingly, CareMore is not entitled to remove this action as a "person acting
20 under" an officer of the United States, and Plaintiff's Motion to Remand is
21 GRANTED.
22 / / /
23 / / /
24 / / /
25
26
27
28

## **CONCLUSION**

For the foregoing reasons, the court GRANTS Plaintiff's Motion to Remand (Dkt. 23). Defendant CareMore's Motion to Dismiss (Dkt. 24) is DENIED as moot.

IT IS SO ORDERED.

Dated: July 29, 2021

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge